UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David S. Sargent,
        Plaintiff

        v.                                    Civil No. 09-cv-310-SM
                                              Opinion No. 2010 DNH 031
Verizon Services Corporation,
        Defendant

**O R D E R**

David Sargent brings this action seeking to recover what he
claims are unpaid severance benefits that were promised to him by
his former employer, Verizon Services Corporation.  Pending
before the court are Sargent's motion to strike defendant's
affirmative defenses, his motion to stay review of administrative
record, and his motion for partial summary judgment.  Verizon
objects.

The central question presented by each of Sargent's motions
is whether Verizon's severance program constitutes an employee
welfare benefit plan under the Employee Retirement Income
Security Act ("ERISA").  Because the court concludes that
Verizon's severance program is an ERISA-governed plan, each of
Sargent's three pending motions is denied.

**Background**

The material facts are largely undisputed.  In October of 2007, in conjunction with the proposed sale of various Verizon assets to FairPoint Communications, Inc., Verizon asked for volunteers to leave its employment under a reduction in force ("RIF").  Sargent says that, "[a]fter careful examination of all the facts and his options under the RIF, [he] volunteered for the RIF."  Exhibit D to defendant's memorandum, Statement of David S. Sargent, Verizon Claim Initiation Form (document no. 18-6) at 1.

On November 29, 2007, Sargent received a "Reduction in Force Package."  Exhibit C to defendant's memorandum (document no. 18-5).  Included in that package was a "Separation Agreement and Release," id. at 4-9 (the "Separation Agreement"), which provided, among other things, that:

1. "I am voluntarily signing this document (the 'Release'), which governs the terms of my separation from employment with the Company. My signature is in exchange for a cash separation payment in the amount of $76,913.20 (less applicable withholding taxes) under the Verizon Severance Program for Management Employees (the 'Severance Program')."  Id. at para. 1 (emphasis supplied).

2. "I understand that I can revoke this Release within seven (7) days of signing and this Release will not become effective until the end of that seven (7) day period."  Id. at para. 3.

3. "I acknowledge that, before signing this Release, I have received: (a) a copy of the

2

Severance Program document or summary;
. . ..” <u>Id</u>. at para. 4(a).

4.    I understand that the Severance Program is
governed by federal law (ERISA) and that
ERISA overrides and pre-empts state law.  If
not preempted by ERISA or other federal law,
the interpretation and enforceability of this
Release shall be governed by the laws of the
state in which I am working on the date of my
separation from service, without regard to
that state’s conflict of laws rules.” <u>Id</u>. at
para. 14.

5.    This Release is the entire agreement between
the Company and me.  No promises or
representations have been made to me other
than those in this Release.  In deciding to
sign this Release, I have not relied on any
statement by anyone associated with Verizon
that is not contained in this Release.  It is
not necessary that the Company sign this
Release for it to become binding on both me
and the Company.  <u>Id</u>. at para. 17.

Also included in Sargent’s RIF package was a summary plan

description, entitled “Your Severance Program” (the “SPD”).

Among other things, that document explained how each individual

employee’s severance payment would be calculated (<u>id</u>. at 40-43)

and provided:

**Plan name/identification**.  This severance program is an
employer-sponsored welfare benefit plan governed by the
Employee Retirement Income Security Act of 1974
(ERISA).  The plan is commonly known as the “severance
program,” but the official plan name is the “Verizon
Severance Program for Management Employees.”  The plan
provides severance benefits to eligible participants
(see page 4).  The plan number for the plan is 534.

<u>Id</u>. at 54.  The SPD also explained that, in order to receive

severance pay, an employee “must have a <u>qualifying separation</u>

3

(see page 5) and sign and deliver a separation agreement (see page 12) during the time period specified in the separation agreement." <u>Id</u>. at 43 (emphasis supplied).

Sargent signed the Separation Agreement on December 3, 2007, and faxed it to Verizon. Three days later, Verizon acknowledged it had received the signed document. The next day, however, Verizon informed Sargent that it had rescinded his RIF offer because he had been identified as an employee who would be transferred to FairPoint. <u>See</u> Exhibit F to defendant's memorandum, Letter from Michael Russo to David Sargent (document no. 18-8). Rather than accept the transfer, however, Sargent voluntarily retired from Verizon on December 28, 2007.

In May of 2008, Sargent filed a "Claim Initiation Form" with the Verizon Claims Review Unit, challenging the refusal to pay him the roughly $77,000 in severance benefits he says he was promised. As part of that process, Sargent acknowledged that he was bringing an "ERISA claim," which should be reviewed under the traditional ERISA "arbitrary and capricious" standard of review. Exhibit D to defendant's memorandum, Verizon Claim Initiation Form, Statement of David S. Sargent (document no. 18-6) at 1, 4. Nevertheless, Sargent maintained that he was not waiving "his right to assert that ERISA does not preempt his right to bring a state-law claim for breach of contract." <u>Id</u>. at 1.

4

The Verizon Claims Review Unit denied Sargent's claim,
concluding that he had not undergone the required "Qualifying
Separation" from Verizon, which would have entitled him to
benefits under the Verizon Severance Program for Management
Employees.  Moreover, the Claims Review Unit also concluded that
even if Sargent's act of signing the Separation Agreement could
be construed as a "Qualifying Separation," he did not suffer "a
period of unemployment" - one of several requirements to be
eligible for benefits under the program - because he had a job at
FairPoint scheduled to begin on January 1, 2008.  Exhibit G to
defendant's memorandum, Final Claim Determination (document no.
18-9).

By letter dated January 9, 2009, Sargent appealed that
adverse decision, challenging the Claims Review Unit's
interpretation of the severance program.  The Verizon Claims
Review Committee denied his appeal and notified Sargent of his
right to bring suit under ERISA.  Exhibit I to defendant's
memorandum (document no. 18-11).  In October of 2009, Sargent
filed suit in state court, advancing the following claims: breach
of contract (count one); negligent misrepresentation (count two);
a statutory claim for unpaid wages under N.H. Rev. Stat. Ann.
("RSA") ch. 275 (count three); and a statutory claim for unfair
business practices, under RSA 358-A (count five).  He also

advanced claims for enhanced compensatory damages (captioned as count four) and attorney's fees (captioned as count six).

Verizon timely removed the action, invoking this court's federal question and diversity subject matter jurisdiction. As to the former, Verizon asserts that all of Sargent's state law claims are preempted by ERISA, and notes that a state law claim preempted by ERISA is treated as one arising under federal law for purposes of subject matter jurisdiction and removal. See Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.") (citation and internal punctuation omitted); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987) (holding that common law causes of action that are preempted by ERISA are removable to federal court). See generally Tracy v. Principal Fin. Group, 948 F. Supp. 142, 144 (D.N.H. 1996) ("As is typical in these [ERISA] preemption cases, a removing defendant tows the case into the federal harbor only to try to sink it once it is in port.") (quoting La Buhn v. Bulkmatic Transport Co., 644 F. Supp. 942, 948 (N.D. Ill. 1986)).

## Standard of Review

In his motion for partial summary judgment, Sargent says
that "this case is properly adjudicated in accordance with the
state-law claims asserted in the state court writ, and it is not
pre-empted by ERISA." Id. at 4.  Because resolution of that
issue - whether Sargent's claims are preempted by ERISA - will
determine his summary judgment motion, as well as his two other
pending motions, it is better to focus on that issue first.

When ruling on a party's motion for summary judgment, the
court must "view the entire record in the light most hospitable
to the party opposing summary judgment, indulging all reasonable
inferences in that party's favor." Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate
when the record reveals "no genuine issue as to any material fact
and . . . the moving party is entitled to a judgment as a matter
of law." Fed. R. Civ. P. 56(c).  In this context, "a fact is
'material' if it potentially affects the outcome of the suit and
a dispute over it is 'genuine' if the parties' positions on the
issue are supported by conflicting evidence." Int'l Ass'n of
Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103
F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

7

**Discussion**

As noted above, Verizon says Sargent is seeking benefits under its ERISA-governed "Verizon Severance Program for Management Employees" and, therefore, each of his state-law claims is preempted.  Sargent disagrees, countering that because the severance benefit offered to him by Verizon called for nothing more than a one-time, lump-sum payment, Verizon's severance program is not subject to the provisions of ERISA.  In fact, says Sargent, his claims do not even implicate Verizon's severance program.  Instead, this case involves little more than Verizon's breach of a free-standing, fully integrated contract under which it became obligated to pay him severance benefits in the amount of $76,913.20.  Accordingly, says Sargent, his state law claims are not preempted.

As the Supreme Court has observed, "ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans.'"  Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7 (1987) (citing 29 U.S.C. § 1144(a)) (emphasis in original).  Consequently, Sargent's state-law claims are preempted only if: (1) Verizon's Severance Program for Management Employees is an ERISA-governed employee welfare benefit plan; and (2) Sargent's state-law claims "relate to" that plan.  See 29 U.S.C. § 1144(a).

See also <u>Shaw v. Delta Air Lines, Inc.</u> 463 U.S. 85, 96-97 (1983) (discussing the scope of ERISA's preemption provision).

**I.    <u>Verizon's Severance Program is an ERISA Plan</u>.**

In <u>Fort Halifax</u>, the Court held that a Maine statute requiring employers to provide severance benefits to their employees when a plant is closed or relocated "neither establishes, nor requires an employer to maintain, an employee benefit <u>plan</u>."  482 U.S. at 12 (emphasis in original).  The Court went on to observe that:

> [Under the Maine statute, the] employer may well <u>never</u> have to pay the severance benefits.  To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes.  To do little more than write a check hardly constitutes the operation of a benefit plan.  Once this single event is over, the employer has no further responsibility.  The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

<u>Id</u>. at 12 (emphasis in original) (footnote omitted).  Addressing severance benefit programs more generally, the Court observed that "[s]ome severance benefit obligations by their nature necessitate an ongoing administrative scheme, but others do not. Those that do not, . . . simply do not [constitute] an employee benefit 'plan.'"  <u>Id</u>. at 18.

Although there is no list of specific elements that define an "ERISA-governed plan," there are a few factors that courts must consider.  Most importantly, the benefit at issue must be

one "whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Id. at 11.  Plans that require an "ongoing administrative scheme" are characterized by things such as multiple potential triggering events giving rise to the obligation to provide benefits (as opposed to a single event, such as a plant closing in Fort Halifax), the need to make individualized decisions about each employee's eligibility for benefits, the exercise of discretion in making those determinations, and a reasonably prolonged period over which such decisions are (or will be) made.  See Simas v. Quaker Fabric Corp., 6 F.3d 849, 854 (1st Cir. 1993) (citing Boque v. Ampex Corp., 976 F.2d 1319 (9th Cir. 1992)).  See also Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 935 (8th Cir. 1999) (noting that the ERISA plan at issue "contemplates a continuing, albeit possibly sporadic, need for processing requests for benefits and making payments" and that "benefits are to be paid only to those employees who are not terminated for disciplinary reasons and who also have given excellent service" to the company); Collins v. Ralston Purina Co., 147 F.3d 592, 597 (7th Cir. 1998) (noting that the plan at issue required the administrator to make "nonclerical 'judgment calls'" to determine each individual employee's eligibility for benefits under the plan); Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 76 (2d Cir. 1996) (concluding that among the relevant factors courts should

10

consider to determine whether an employer's severance program
constitutes an ERISA-governed plan are: whether a reasonable
employee would perceive an ongoing commitment by the employer to
provide benefits; whether the employer was required to analyze
the circumstances of each employee's termination separately in
light of certain eligibility criteria; and whether the employer's
undertaking requires managerial discretion in administration).

Applying those principles to the facts presented in this
case, the court concludes that the Verizon Severance Program for
Management Employees (the "Plan") qualifies as an ERISA-governed
employee welfare benefit plan.  First, the Plan's obligations to
provide severance benefits to qualifying employees are not
triggered by a single event.  Instead, employees eligible for
severance benefits include not only those who were part of the
reduction in force associated with the FairPoint transaction, but
any otherwise eligible employee who underwent (or undergoes) a
"Qualifying Separation" from the company.  <u>See</u> Exhibit E to
defendant's memorandum (document no. 16-6), the Plan, para. 3.1.
The Plan defines "Qualifying Separation" to include a range of
possibilities, including both involuntary and voluntary
departures from the company:

> A "Qualifying Separation" means (i) an <u>involuntary</u>
> <u>termination</u> of the Employee's employment by a
> Participating Company <u>for business reasons</u>, either
> individually or as part of a larger reduction in force;
> or (ii) a <u>voluntary termination</u> of employment by the
> Employee <u>due solely to</u> the Employee's refusal to accept

a Reclassification, Relocation, Increase in Hours, or
Reductions in Hours initiated by a Participating
Company.

Id. (emphasis supplied).  Each of the capitalized terms used in

that definition is itself defined in substantial detail.  Of

particular significance in this case, the Plan provides that:

An Employee who indicates a willingness to be
involuntarily terminated in connection with a reduction
in force or similar staffing exercise but who is not
actually selected by a Participating Company to be
involuntarily terminated shall not be considered to
undergo a Qualifying Separation (even if the Employee
voluntarily terminates employment at or about the time
of the reduction in force).

Id. at para. 3.1.

Additionally, the Plan defines "Ineligible Separations" –

that is, those separations from the company specifically excluded

from the scope of Qualifying Separations.

A Qualifying Separation does not include an ineligible
separation from service such as:

An Employee's voluntary termination of employment for
no reason or for any reason other than a refusal to
accept a Reclassification, Relocation, Increase in
Hours, or Reduction in Hours initiated by a
Participating Company;

an Employee's involuntary termination of employment
that is characterized (at the time of termination or
subsequently) by the applicable Participating Company
as a termination for misconduct or cause (including
poor performance) (notwithstanding a contrary
characterization or recharacterization of such
termination by the Participating Company or any other
person for any other purpose); and

any other involuntary termination of employment in
which the Employee does not actually suffer a period of
unemployment.

12

<u>Id</u>. at para. 3.2 (emphasis supplied).  That section of the Plan also provides that an "employee who undergoes an ineligible separation will not be considered to have undergone a Qualifying Separation and is not eligible to receive any severance benefits under the Plan <u>even if the employee is provided with an involuntary separation notice and/or signs a Legal Release</u>."  <u>Id</u>. (emphasis supplied).

Plainly, then, eligibility for severance benefits under the Plan is far from automatic, and depends on more than simply signing a Separation Agreement.  The Plan also reserves to its administrator (and, in some cases, the particular participating employer) discretion to make the various determinations necessary to an employee's eligibility for severance benefits (e.g., whether the employee's termination was "for business reasons" or "for misconduct or cause;" whether the termination was voluntary or involuntary; whether the employee suffered a period of unemployment following his or her termination; and, ultimately, whether it was a "Qualifying Separation" or an "Ineligible Separation").

Additionally, the Plan provides an administrative appeal process for employees who feel they have been wrongfully denied benefits.  The Plan at para. 5.3 ("A claimant whose claim for benefits has been denied, in whole or in part, may request a review of such denial by filing a written notice of appeal with

13

the Plan Administrator."). And, again, the Plan reserves to its
administrator discretion to determine whether the appealing
employee meets the eligibility criteria for the benefits sought.
Id. (providing that the decision of the Plan Administrator is
final, unless the claimant proves that the decision to deny
benefits under the Plan amounted to "an abuse of its fiduciary
discretion").

    As the court of appeals for this circuit observed, the
degree to which an employer has discretion in administering an
employee welfare benefit plan is central to determining whether
that plan falls within the scope of ERISA:

>       In evaluating whether a given program falls under
>       ERISA, we have looked to the nature and extent of an
>       employer's benefit obligations.  Those obligations are
>       the touchstone of the determination: if they require an
>       ongoing administrative scheme that is subject to
>       mismanagement, then they will more likely constitute an
>       ERISA plan; but if the benefit obligations are merely a
>       one-shot, take-it-or-leave-it incentive, they are less
>       likely to be covered.  Particularly germane to
>       assessing an employer's obligations is the amount of
>       discretion wielded in implementing them.  Where
>       subjective judgments would call upon the integrity of
>       an employer's administration, the fiduciary duty
>       imposed by ERISA is vital.  But where benefit
>       obligations are administered by a mechanical formula
>       that contemplates no exercise of discretion, the need
>       for ERISA's protections is diminished.

O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 266-67 (1st Cir.
2001) (citations and internal punctuation omitted) (emphasis
supplied).  In this case, the Plan has not only reserved
substantial discretion to its administrator, but the

14

administrator must actually exercise that discretion in making a case-by-case determination as to each employee's eligibility for benefits under the Plan.

Finally, although not dispositive, it is relevant that: Verizon treated the Plan as an ERISA-governed employee welfare benefit plan (e.g., described it as such, made the requisite annual federal filings and disclosures, etc.); provided its employees with notice that the severance program was governed by ERISA; and gave employees a means by which to determine beneficiaries, available benefits, and the procedures for receiving benefits under the Plan. See, e.g., Belanger v. Wyman-Gordon Co., 71 F.3d 451, 455 (1st Cir. 1995) ("One very important consideration is whether, in light of all the surrounding facts and circumstances, a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits."). See also Winterrowd v. Am. Gen. Annuity Ins. Co., 321 F.3d 933, 938-39 (9th Cir. 2003) (holding that to constitute an ERISA-governed plan, a plan "must invoke an ongoing administrative program, and must enable reasonable persons to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.") (citations and internal punctuation omitted); Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629 (8th Cir. 2001) ("In determining whether a plan (pursuant to a writing or not) is a reality a

15

court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.  No single action in itself necessarily constitutes the establishment of the plan.  However, an ERISA plan must embody a set of administrative practices.") (citations and internal punctuation omitted).

Given the totality of circumstances presented, and in light of the guidance provided by the Supreme Court in <u>Fort Halifax</u>, the court concludes that the Verizon Severance Program for Management Employees is an ERISA-governed employee welfare benefit plan.  While it is well-established that an employer's obligation to provide a single, non-recurring, non-discretionary, lump-sum severance payment to departing employees does not constitute an ERISA-governed plan, the program at issue in this case requires individualized, case-by-case benefit-eligibility determinations, applying criteria that are "far from mechanical." <u>Simas</u>, 6 F.3d at 854.  Those eligibility decisions require "the sort of discretionary decision-making by the plan's administrator that is the hallmark of an ERISA plan."  <u>Boque</u>, 976 F.2d at 1322. Moreover, those eligibility decisions will take place over a prolonged period of time and will be prompted by a variety of triggering events - that is, each time a potentially eligible

16

employee leaves Verizon's employment, either voluntarily or
involuntarily.

**II.   Sargent's State-Law Claims "Relate to" the Plan.**

"While ERISA's preemption is not boundless, it is far
reaching." Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir.
2007).  Accordingly, the Supreme Court has identified three
categories of state laws that "relate to" ERISA plans in such a
way that they are preempted:

> (1) state laws that "mandate employee benefit
> structures or their administration," (2) state laws
> that "bind plan administrators to [a] particular
> choice," and (3) state law causes of action that
> provide "alternative enforcement mechanisms" to ERISA's
> enforcement regime.

Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000)

(quoting New York State Conf. of Blue Cross & Blue Shield Plans

v. Travelers Ins. Co., 514 U.S. 645, 658-59 (1995)).  Here, each

of Sargent's state-law causes of action plainly falls into the

first and/or third category of pre-empted claims.

By this action, Sargent seeks to compel Verizon to do that
which he says it is contractually obligated to do: pay him the
nearly $77,000 in severance benefits he claims he became entitled
to upon signing the Separation Agreement (or to pay damages as a
result of its failure to pay those benefits).  But, as the
Separation Agreement plainly states, those severance benefits
were offered to Sargent "under the Verizon Severance Program for

17

Management Employees." Id. at para. 2.  The Separation Agreement also specifically stated that, if Sargent should breach its terms, he would be obligated to repay "the cash separation payment or other benefits [he had received] under the [Plan]." Id. at para. 2(b).  And, finally, by signing the Separation Agreement, Sargent specifically acknowledged receiving a copy of the Plan document, id. at para. 4, and represented that he understood that "the Severance Program is governed by federal law (ERISA) and that ERISA overrides and pre-empts state law," id. at para. 14.

Consequently, to determine whether Verizon wrongfully deprived Sargent of severance benefits under the Plan, the court must interpret the terms of that Plan and assess Sargent's eligibility for benefits.  In such situations, it is clearly established that state law claims of the sort advanced by Sargent are preempted.  See, e.g., Hampers, 202 F.3d at 52 ("We have consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action.").  See also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (holding that plaintiff's common law claims of fraud and breach of contract were preempted by ERISA); Metropolitan Life, 481 U.S. at 62 (holding that plaintiff's common law contract and tort claims were preempted by ERISA);

<u>Carlo v. Reed Rolled Thread Die Co.</u>, 49 F.3d 790 794 (1st Cir. 1995) (holding that plaintiff's breach of contract and negligent misrepresentation claims regarding her benefits under an early retirement plan were preempted by ERISA).

For his part, Sargent says his state-law claims do not "relate to" the Plan because the Separation Agreement contains all of the terms governing the parties' respective obligations to each other.  That is to say, (1) his signature on the Separation Agreement evidencing his release of various legal claims was given in exchange for Verizon's promise to pay him nearly $77,000 in severance benefits; and (2) the Separation Agreement contains an integration clause, which provides that "[t]his Release is the entire Agreement between the Company and me."  Separation Agreement at para. 17.  Accordingly, says Sargent, there is no need to refer to provisions of the Plan (or any other extrinsic evidence) to determine his eligibility for the severance payment; the Separation Agreement contains all of the terms of the parties' respective obligations.  Thus, says Sargent, notwithstanding Verizon's efforts to complicate this matter by invoking ERISA and the terms of the Plan, this case involves a straight-forward breach of contract.

While Sargent's argument is somewhat seductive - if for no reason other than its simplicity - it lacks legal support.  To be sure, the Separation Agreement does contain an integration clause

which suggests that it describes the entire agreement between
Sargent and Verizon.  Importantly, however, the Separation
Agreement also incorporates by reference the terms and conditions
of the Plan - a copy of which was provided to Sargent, along with
the Separation Agreement, in his Reduction in Force package.  <u>See</u>
Separation Agreement at para. 2 ("My signature is exchange for a
cash separation payment in the amount of $76,913.20 . . . <u>under</u>
<u>the Verizon Severance Program for Management Employees</u>.").  <u>See</u>
<u>also</u> <u>Id</u>. at paras. 2(b), 4(a), and 14 (emphasis supplied).
Moreover, the Notification Letter and the Summary Plan
Description provided to Sargent also informed him that his
receipt of severance benefits was subject to the provisions of
the Plan.  <u>See</u> Exhibit C to defendant's memorandum, Notification
Letter and Reduction in Force Package (document no. 18-5), at 1
("You must sign and return the enclosed Separation Agreement and
Release within the time period specified in the separation
agreement <u>to receive benefits under the new severance program</u>.").
<u>See also</u> Summary Plan Description (document no. 18-5) at 43.

        Thus, while the Separation Agreement does, in a sense,
represent the entire agreement between the parties, that "entire
agreement" incorporates and includes the terms of the referenced
ERISA-governed Plan.  Consequently, Sargent's state-law claims to
the severance benefit he says he was promised (or damages as a
result of Verizon's failure to pay that benefit) plainly "relate

to" the Plan.  They are, then, preempted by ERISA.  See, e.g., Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 242 (1st Cir. 2002) ("[A] suit by a beneficiary to recover benefits from a covered plan . . . falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes.") (quoting Metropolitan Life Ins. Co., 481 U.S. at 62-63).

### Conclusion

The Verizon Severance Program for Management Employees is an ERISA-governed employee benefit plan.  Because Sargent's state law claims "relate to" the Plan, they are preempted by ERISA. See 29 U.S.C. § 1144(a).  Accordingly, Sargent's motion for partial summary judgment on his state law claims (document no. 14) is denied.  It necessarily follows that his motion to strike Verizon's ERISA-based affirmative defenses (document no. 12) is also denied.  His motion to stay review of administrative record pending a determination as to whether this case is subject to ERISA preemption (document no. 13) is denied as moot.

On or before March 23, 2010, Sargent shall file an amended complaint, setting forth the essential elements of a viable ERISA claim against the Plan administrator, if he can.  If an amended complaint is not timely-filed, the court will assume that he has

elected not to pursue any such claim(s) and it will enter

judgment in favor of Verizon and close the case.

        **SO ORDERED.**

                                        Steven J. McAuliffe
                                        Chief Judge

February 22, 2010

cc:  David P. Slawsky, Esq.
     Arthur G. Telegen, Esq.
     Dana L. Fleming, Esq.